Hannah L. Cannom (Bar No. 245635)
hcannom@wscllp.com
WALKER STEVENS CANNOM LLP
500 Molino Street, Suite 118
Los Angeles, California 90013
Tele: (213) 337-9972
Fax: (213) 403-4906

*Attorneys for Plaintiffs*
*Dianna Edwards and Wisdom Transcends Inc.*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| DIANNA EDWARDS AND WISDOM TRANSCENDS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> LEE HARRIS, and LEE HARRIS ENERGY LLC, <br><br> Defendants. | Civil Action No. 24-cv-1655 <br><br> **COMPLAINT FOR** <br> 1. **DECLARATORY JUDGMENT FOR OWNERSHIP OF TRADEMARK** <br> 2. **BREACH OF ORAL CONTRACT** <br> 3. **FRAUD AND CONCEALMENT** <br> 4. **EQUITABLE ACCOUNTING** <br> 5. **QUASI-CONTRACT/UNJUST ENRICHMENT** <br> 6. **PROMISSORY ESTOPPEL** <br> 7. **DECLARATORY JUDGMENT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs Dianna Edwards ("Edwards") and Wisdom Transcends, Inc. ("Wisdom Transcends" and, together with Edwards, "Plaintiffs") hereby file this Complaint against Defendants Lee Harris Energy LLC ("LHE") and Lee Harris ("Harris" and together with LHE, "Defendants") and allege as follows:

## THE PARTIES

1.      Plaintiff Edwards is a citizen of the United States and a resident of the United Kingdom.

2.      Plaintiff Wisdom Transcends is a corporation organized under the laws of the State of Arizona, with its principal place of business at 223 North Guadalupe Street, Suite 480, Santa Fe, New Mexico, 87501.

3.      Upon information and belief, Defendant LHE is a Florida limited liability company with a place of business at 4767 New Broad Street, Orlando, Florida 32814. LHE filed an Application to Register a Foreign Limited Liability Company with the Secretary of State of the State of California ("California Secretary") on January 21, 2021.  A Statement of Information for LHE filed with the California Secretary dated November 18, 2022 indicates that the principal address of LHE in California is 1401 21st Street, Ste. R, Sacramento, CA 95811, the address of LHE's registered agent.

4.      Upon information and belief, Defendant Harris is a California resident with a primary address at 26050 Mulholland Hwy, Calabasas, California 91302.

## JURISDICTION AND VENUE

5.      Edwards is a citizen of New Mexico and a resident of the United Kingdom, Wisdom Transcends is a corporation organized under the laws of the state of Arizona, with its principal place of business in New Mexico. Defendants are citizens of Florida

(LHE), and California (Harris). Therefore, complete diversity between Plaintiffs and Defendants is established under 28 U.S.C. § 1332(a).

6. The amount in controversy exceeds $75,000.

7. Plaintiffs also bring claims arising under the Lanham Act. This Court has jurisdiction over those claims under 28 U.S.C. § 1331 and 15 U.S.C. § 1121. This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367 because they arise out of the same set of operative facts.

8. Upon information and belief, Defendant LHE transacts and conducts business in this District and in the State of California and is subject to the personal jurisdiction of this Court. Upon information and belief, LHE has minimum contacts within the State of California and this District and has purposefully availed itself to the privileges of conducting business in the State of California and this District. Plaintiffs' causes of action arise directly from LHE's business contacts and other activities in the State of California and in this District.

9. Upon information and belief, Defendant Harris resides in the State of California and this District and is subject to the personal jurisdiction of this Court.

10. Venue is proper in this District under 28 U.S.C.§§ 1391(b) and (c), including based on Defendants' physical presence and location in the district (Harris), and/or Defendants' transaction of business in this District directly and/or through affiliates and acts giving rise to the Complaint having occurred in this District (LHE and Harris).

# **BACKGROUND**

## **Edwards and Harris Meet**

11.     Edwards is a psychotherapist and author who works with adults and children to deepen and grow their living experiences and helps people of all ages deal with issues of grief and loss. She is the award-winning author of a series of children's books centered around a dog named Patou who teaches young children and adults to face the challenges that come their way.

12.     Edwards wrote the Patou books to help grieving children and families; she has donated her books to many charities for their use in working with families.

13.     Harris identifies himself as a "globally acclaimed Energy Intuitive, Channeler, Author and Musician." He has a website and podcast through which he promotes videos, music, and teaching to help his clients find a path of "intuition and awareness."

14.     Edwards met Harris in 2018. Edwards thereafter became a friend, informal business advisor, and personal counselor to Harris as he grew and structured LHE. Harris visited Edwards at her homes in the years thereafter several times.

15.     As they worked together, Edwards learned more about Harris and his connection to the "Z's"—Harris' self-reported guides whom he asserts have been communicating with him since the 1990's.

## **Edwards and Harris Conceptualize Conversations with the Z's**

16.     One day in August 2021, Harris was staying with Edwards at her home in New Mexico. While Edwards and Harris were brainstorming ideas for his web releases,

Edwards told Harris that she would like to interview the Z's on the subject of conscious living and dying.

17.    During that visit, a new idea emerged between Harris and Edwards for a series of conversations in a new format where Edwards would ask questions and Harris would channel answers from his guides, the Z's. The idea quickly took shape in the form of a series of audio recordings published and sold on the LHE website. Edwards described the series as the "Conversation with the Z's."

18.    During Harris' August 2021 visit to Edwards' home in New Mexico, Edwards and Harris had a flood of ideas. It quickly became clear to them that the project would evolve into many topics, conversations, and books.

19.    During this visit, Harris shared with Edwards that his guides, the Z's, had just given him the name "The Energetics of the New Human Soul" for the first set of conversations among Harris, Edwards, and the Z's.

20.    While the initial focus and interest of Edwards was on the topics of grief, dying and other issues surrounding those subjects, Edwards saw "The Energetics of the New Human Soul" as the basis for a series of important introductory topics for their target audience. Edwards realized that the works would need to build on one another and that conversations on such potentially complex topics such as death and dying would best be introduced later through additional books and recordings.

21.    The idea to jointly create the series of recordings called "Conversations with the Z's" quickly took shape with plans to begin these recordings at Edwards' home in November 2021. This new project represented something very different that would require a significant amount of creative input and design by Edwards.

22.     As described by Edwards in the Foreword to the first book in the series, Harris charged Edwards with the task of structuring and creating the list of topics, subjects, and questions in preparation for their first recordings. Working with the title that the Z's had given Harris and Edwards, Edwards spent the next two and a half months researching and writing the questions for the topics she chose that she felt were right for the first title the Z's had given them.

23.     The "Conversations with the Z's" title was a source identifier for the series of books and conversations that Harris and Edwards created. Edwards understood that the "Conversation with the Z's" trademark would be jointly owned by Edwards and Harris and/or their respective entities, Wisdom Transcends and LHE.

24.     Harris states in the first book that the Z's had made clear on the night of their first recording that the recordings would become books.

25.     During a November 2021 visit, Edwards and Harris agreed to write a series of books and publish related content that centered around conversations between Harris and Edwards where Harris channels communications from his guides, the Z's, and Edwards interviewed Harris regarding the insight of the Z's. Edwards and Harris agreed that they would publish between ten and twelve books as a collaboration.

26.     In the Foreword to the second book in the series, Harris acknowledged that Edwards "spends an enormous amount of time feeling and connecting with what she believes the collective energy would benefit from knowing. In fact, **she has already sketched out a long-term vision of the next six books**." (emphasis added)

**Edwards Works Diligently to Create the Series and
Edwards and Harris Record the Series**

27. The creation of each book in the "Conversations with the Z's" series was a laborious effort undertaken primarily by Edwards. After Edwards diligently researched and planned out the background work for each book, Harris would come to record the conversation between Edwards, Harris, and the Z's. These recorded conversations generally lasted between seventy and ninety minutes per session that became individual chapters in the books, and were quite depleting for both Harris and Edwards. Following each recording, Edwards would reevaluate the information that would be included in each of the future books to follow the directions and information that emerged from each recording.

28. During the time that Edwards and Harris recorded the sessions, Edwards facilitated the logistics of the recordings. Harris was always either a guest in the home of Edwards or Edwards paid for Harris to stay in a luxury hotel, as with the third book in the series. Edwards also paid for a car and driver to bring Harris several hours to and from her home in the English countryside on the basis of her respect for Harris's preference to neither drive by himself in a car for three hours nor take a train.

29. For each recording session, Edwards always located and arranged for a sound engineer, each of the recording sessions were held in Edwards' home, and Edwards either hosted or paid for catering all of the sessions.

30. From August 2021 until June 2023, Edwards devoted a significant portion of her time to researching, writing, recording, editing, and/or otherwise working on the series. Edwards forged the concept for the entire Conversation with the Z's series—

structuring the series and writing, researching and creating the background for the books and recordings within the series.

31.     As a close friend of Harris and a psychotherapist, Edwards was uniquely positioned to perform these tasks and spent much time and effort to do so, all with Harris' support, agreement, and encouragement.

32.     Following the recording of Book One at Edwards' home in the US in November 2021 and with plans underway for New World to publish Book One in September 2022, Edwards immediately began the arduous work of researching and structuring all of the content for Book Two. It was Edwards' idea to record a "Behind the Scenes" recording which occurred during the November 2021 visit in the US.

33.     Edwards subsequently moved to the United Kingdom. In April 2022, Harris came to Edwards' UK home during a visit to see his family. At Harris' request, Edwards had located a sound engineer and made the arrangements for the recordings for Book Two to occur at her home.

34.     While still in the edit process for Book Two, Edwards began researching the material for Books Three and Four to meet an agreed-upon fall 2022 recording schedule. The third and fourth books in the series were based on Edwards' original vision and were key books designed to be topic-specific, offering the reader a deeper exploration into ideas and information on broad topics such as karma, reincarnation, death, and dying.

35.     Edwards also came up with the book title name for Book Three, "Demystifying Reincarnation and Karma," which Harris quickly agreed to. Four of the

five recordings for Book Three took place on September 9 and 11, 2022 at Edwards' home in the UK.

36.    An important recording for a key chapter in Book Four took place on October 2, 2022. This recording was conducted by Zoom at Edwards' request.

37.    Edwards was researching and writing the final recordings for Books Three and Four and had booked the sound engineer for recording in April 2023 at Edwards' home. Due to apparent personal reasons, approximately one month before the planned recording, Harris asked Edwards to move the recording to August 2023. Edwards was happy to adjust her schedule to accommodate Harris. For reasons described below, Harris ultimately refused to participate in the August 2023 recordings. It was around this time that Harris sent Edwards a photo of him with Regina Meredith ("Meredith") in London. Meredith is an award-winning journalist, author, and host of Gaia TV's *Open Minds*.

## The New World Publishing Agreements

38.    On January 20, 2022, LHE and Whatever Publishing, Inc. dba New World Library ("New World") entered into an agreement to publish Book One (the "NWL Agreement") that granted New World certain exclusive publishing rights. Pursuant to the NWL Agreement, 75% of the sums due were to be paid to LHE and 25% of the sums due were to be paid to Wisdom Transcends.

39.    The agreement to split the sums due as 75% to LHE and 25% to Wisdom Transcends reflects the oral agreement between Harris and Edwards regarding Book One and Book Two, as decided in New Mexico during the November 2021 visit.

40.     During the November 2021 visit, Harris and Edwards further agreed to change payments so that sums payable for Book 3 and Book 4 would be 2/3 to LHE and 1/3 to Wisdom Transcends.

41.     The NWL Agreement names Edwards as a co-author of Book One, and New World agreed to pay Wisdom Transcends a percentage of any proceeds owed to LHE under the NWL Agreement.

42.     Harris had made it clear to Edwards in prior conversations that since he had already published "Energy Speaks" with New World and because it was his relationship with New World that clinched the book offer for Harris and Edwards, that New World preferred to deal solely with Harris.

43.     Edwards allowed Harris to proceed with New World. At all times relevant, Edwards was led to believe that Harris would protect the best interests of the books and Edwards' rights associated with them.

44.     The first collaboration between Edwards and Harris, *Conversations with the Z's, Book One: The Energetics of the New Human Soul* ("Book One"), was published by New World on or about September 2022 pursuant to the NWL Agreement among Harris, LHE, and New World.

45.     Edwards' husband, Douglas Wyatt ("Wyatt") provided feedback and support to Harris and to LHE's consultant, David Brand ("Brand") in connection with the NWL Agreement. In his review of the NWL Agreement, Wyatt was respectful of Harris' insistence that Edwards not be a party to the contract nor directly involved in the contract negotiations.

46.     Indeed, Harris explicitly told Edwards that New World would only deal with Harris, and neither Edwards, nor her husband, wanted to disrupt the contracting process.

47.     In an email dated January 26, 2021, Wyatt stated to Harris and Brand that "we need to word this a bit differently **so that while it is acknowledged that Lee and Dianna are the individual authors**, they are clearly binding their respective entities to the agreement so that they are not personally liable in the event of any future litigation." (emphasis added). It was thus made clear to Harris and LHE that Edwards wanted her rights as a co-author to be honored by Harris and LHE, and Edwards relied on Harris to act in her best interests in those negotiations.

48.     In or around May 2022, New World and Harris entered into an agreement to publish Book Two (the "Second NWL Agreement"). Pursuant to the Second NWL Agreement, 75% of the sums due were to be paid to LHE and 25% of the sums due were to be paid to Wisdom Transcends.

49.     Under the Second NWL Agreement, New World and LHE agreed that New World would register the copyright for Book Two solely in the name of LHE and that the license would be exclusive to LHE, contrary to Edwards' rights in Book Two, and without Edwards' knowledge or consent.

50.     The second collaboration between Edwards and Harris, *Conversations with the Z's, Book Two: Awaken Your Multidimensional Soul* ("Book Two"), was published by New World on or about May 2023 pursuant to the "Second NWL Agreement.

51.     Edwards has always been clear and respectful of Harris' desire that he is the "face of the books" as he has termed it to Edwards. Edwards has consistently maintained

that she has no interest in changing this position by participating in any publicity arrangements, or changing her presence on the book covers, nor does she desire to change the financial arrangements the parties agreed to for Book One and Book Two. Harris always requested that the books be described as "by Lee Harris with Dianna Edwards" to which Edwards readily agreed.

52. Edwards researched, structured, and wrote the topics, questions and direction for Book One and Book Two as the two-part introductory books of the series. Book One and Book Two were instant best-sellers and have been translated into numerous foreign languages. Included in this process was the ongoing work by Edwards to adjust the narrative of the next six books as new topics and questions came up in each of the recordings.

53. Edwards also worked diligently to research, structure, and write Books Three and Four, which were to be released on the same terms as Books One and Two, except for an agreement between Harris and Edwards that Edwards' share in sums due would increase.

### Harris, LHE, and New World Mismanage the Copyright Registration Process

54. Neither Edwards nor Wisdom Transcends are signatories to the NWL Agreements.

55. In May 2023, Edwards learned that Books One and Two were not statutorily copyright protected at all, let alone in both authors' names. Edwards therefore became concerned that Harris was primarily focused on the commercial benefits of the relationship with NWL for his own future benefit rather than protecting the legal and

commercial rights of the Conversations with the Z's series for the joint interests of Harris and Edwards.

56. Edwards therefore informed Harris that she would engage counsel to understand what was needed to protect the works because he had not yet done so.

57. In that process, Edwards learned that Harris and New World had not only failed to file correct and/or timely applications for copyright registration for Books One and Two, but Harris and LHE also failed to file timely and/or correct copyright applications to the audio recordings of the books that had been released in the public domain.

58. Edwards believes that Defendants conspired to apply for copyright registration of Book Two solely in the name of LHE because New World would not have an exclusive license if the Second NWL Agreement did not have a full assignment of rights from both co-owners. By attempting to cut off Plaintiffs' rights to Book Two, Defendants believed they could assign an exclusive license to New World.

59. At the same time that Edwards learned of the incorrect and/or missing copyright applications, Edwards also came to learn that Harris was working with New World on a new agreement that would not be beneficial to Edwards or Wisdom Transcends.

## The Ill-Fated Imprint Agreement
## between LHE and New World

60. Edwards and Harris had been discussing the possibility that it might be better to self-publish Book Three and Book Four which Harris disclosed to New World. Shortly thereafter, Harris informed Edwards that New World had offered Harris an

"Imprint" deal to keep the series with New World. Harris told Edwards that the offer that Harris received from New World to create a "Lee Harris Editions" Imprint (the "Imprint Agreement") was very much the direction that he wanted to go with his career.

61. Harris showed enormous enthusiasm for his new Imprint deal that he announced to Edwards he would be signing with New World. Since it was to include Book Three and beyond, Edwards asked to see a copy of the proposed Imprint Agreement. According to Harris, this would be the contract under which Book Three, Book Four, and future books would be printed.

62. Around this time, Edwards suggested that Harris retain his own IP counsel to provide advice to Harris regarding the lack of copyright registrations for Books One and Two, other issues with the existing New World agreements, and the forthcoming Imprint Agreement.

63. After numerous requests from Edwards to see the forthcoming Imprint Agreement, Harris eventually sent to Edwards what he termed as the "revised agreement" with New World on May 22, 2023. In the email accompanying the agreement, Harris wrote to Edwards that: "attached is our revised agreement, just for you to take a look. We are comfortable with the terms and this seems like the right move at the right time. **Lee Harris Editions** here we go!" (emphasis in original).

64. Immediately upon reading the proposed "revised" version of the Imprint Agreement, it was clear to Edwards that the terms were significantly less favorable for Edwards than the existing contract terms between New World and LHE for Books One and Two of Conversations with the Z's. Concerned, Edwards reached out to counsel for advice.

65.     Given Edwards' growing concerns about the NWL Agreements, including that copyright registrations had never been filed, and the forthcoming Imprint Agreement, Edwards asked her counsel and husband to work with Harris and LHE to memorialize past agreements between Edwards and Harris and to negotiate the terms of the Imprint Agreement in the best interest of both Wisdom Transcends and LHE. Edwards again encouraged Harris to engage an IP lawyer to represent LHE to clean things up so that both Edwards and Harris could proceed in a more clear and professional manner with the book project.

66.     In an email dated May 24, 2023, Edwards' husband wrote to Brand, an LHE business consultant whom Harris had tasked to handle the matter, "Regarding audio rights and revenue, I had understood that LHE was going to retain 100% of those as per the original Book 1 agreement but I see in this draft that NWL is taking 50% of the audio revenue from LHE produced work and 75% of NWL produced audio revenue.  When did this change?" Brand immediately responded saying "I've reached out to Lee to review all the terms to make sure he is comfortable with what's being setup. So, hang in there and I will back to you, probably tomorrow." However, Brand never responded.

67.     On June 1, 2023, counsel for Edwards sent an email to Brand pointing out several outstanding issues that needed to be addressed before inclusion of additional books within the scope of the Imprint Agreement could be considered. Specifically, Harris had represented to New World that he had an exclusive license for Books One and Two when in fact Edwards had never granted such authority in her capacity as co-author.

68.     After reading the changes to the proposed Imprint Agreement, it was clear to Edwards that issues within the Imprint Agreement were still being missed by Harris and LHE, and not being appropriately disclosed to New World.

69.     At the time, Edwards was concerned that Harris, in his enthusiasm for this Imprint Agreement, had missed several fundamental problems in the proposed contract. As set forth in Paragraphs 54 through 59, above, Edwards determined that New World had not applied for copyright registrations for Books One and Two or their audio companions, and that any future copyright application would be incorrect if made pursuant to the terms of the contract.

70.     Edwards was deeply concerned that Harris did not understand the magnitude of issues that needed to be resolved before anyone entered into a new agreement to publish the forthcoming books in the Conversations with the Z's series. She further felt that Harris was not honoring the agreement that they had made in Santa Fe in 2021 on the basis that it appeared that New World and LHE were conspiring to publish and copyright Books One and Two in the name of Harris and LHE only. Edwards again encouraged Harris to engage IP counsel.

71.     The draft Imprint Agreement revealed many problems which Edwards continued to bring to the attention of Harris without resolution. Edwards became more concerned by her inability to effectively communicate key issues to Harris. In fact, Harris had asked Brand to take charge of the matter which complicated Edwards' ability to achieve any resolution. In an email dated June 2, 2023, Edwards therefore told Harris "If you go ahead with the Imprint deal at this point, I want to go on written record that you do not have my permission to include new material involving the Conversations

with the Zs as a part of it." Harris responded to Edwards that he understood and would not proceed on an agreement without her consent.

### **Harris Breaches the Oral Agreement Concerning Publication of Additional Materials in the Series**

72.     Despite the unresolved problems brewing in the draft Imprint Agreement with New World, in June 2023, Edwards and the LHE team had begun the process of editing the transcripts for the written version of Book Three of Conversations with the Z's.

73.     Harris requested a phone call with Edwards to catch up as friends and the two spoke on June 18, 2023. On the phone call, Edwards was surprised by the curt tone and inquisitive focus of Harris' conversation. At one point when Edwards complimented Harris on the increasing success of his song, *The Deer's Cry* on YouTube, Harris' sharp response was, "why, do I now owe a royalty?" Given that Edwards had suggested that Harris record *The Deer's Cry*, the comment was unsettling. The tone of the call was very different to the pleasantries that were written to Edwards in previous emails from Harris.

74.     Edwards felt that Harris was angry with her for raising concerns about the Imprint Agreement and New World's mishandling of the copyright applications. Edwards worked hard to make clear to Harris in the phone conversation and in a subsequent email that her main goal was to make sure that everything was handled properly and professionally, so they could move forward with finishing the remaining planned books in the series and beyond.

75.     On June 19, 2023, without notice or discussion, Harris postponed the monthly release of recordings associated with Book Three on the LHE site, releases that

were previously scheduled to begin via the LHE website on July 1, 2023. Edwards told Harris in an email on June 20, 2023, that "I think it is very wise to not air the Conversation with the Z's Book 3 material at this time. As you know, a few months ago when you mentioned moving the date forward to start airing the recordings, I was concerned since we had not yet completed the Conversations for that book."

76. Edwards went on to state in the same email: "I believe that our friendship and professional relationship cannot only survive this situation but be stronger for it. I see this as an opportunity, not a problem."

77. On June 21, 2023, again without notice or discussion, Harris wrote another email to Edwards in which he unilaterally and abruptly ended his relationship with Edwards and refused to complete the recording and release of any future books in the series. In that email, Harris made clear that he would refuse involvement in all future work with Edwards, including that he would not release the recordings that Harris and Edwards had created for what had been planned as a key and meaningful chapter in Book Four on subjects involving conscious living and dying.

78. Edwards thought it was prudent to postpone the release of the forthcoming Book Three recordings until they finished the final recording for Book Three, which had been scheduled to occur six weeks later at her home. Nevertheless, she was not at all expecting Harris to refuse to complete and release the entire series with no discussion in light of their five years of friendship and collaboration.

79. While Edwards had been paid an agreed-upon amount for the upcoming release of the audio recordings for Book Three on the LHE private portal site, Edwards was never compensated or reimbursed for her time or expenditures associated with the

creation of the content for Book Three. The parties had agreed that upon the release of Book Three, Edwards would recoup those expenditures through royalty payments from the books. Because neither the audio or written version of Book Three have been released, Edwards has not received any such compensation or reimbursement.

80.     Edwards also refunded the monies Harris had paid her for release of the first four recorded conversations for Book Three on his website. She did so with the understanding that the recordings would not be released by Harris or LHE without Harris reengaging with Edwards and completing those payments.

### New World Offers to Publish Book Three but Harris Rejects the Offer Without Any Notice to Edwards

81.     Notwithstanding Harris' refusal to complete the series, Edwards has continued to attempt to clean up the copyright applications and other unresolved issues.

82.     Regarding Book Three, it was later learned by counsel for Edwards that New World actually offered to Harris to publish Book Three, but this was rejected outright by Harris without consulting or providing notice of any kind to Edwards. This disclosure was only learned by Edwards from an email sent by New World's counsel dated January 18, 2024, which stated that "The third book that I believe is the subject of your client's claim was titled "Demystifying Reincarnation and Karma," and involved Ms. Edwards interviewing Mr. Harris, or some similar collaboration. Mr. Harris declined NWL's offer to publish that book."

83.     According to New World's counsel, in the same email, it was disclosed that "the third book of Mr. Harris' that NWL is planning to publish this year is an entirely different book, with a different collaborator, and not of the same series."

84.     Edwards was surprised to learn that Harris had replaced her with a new collaborator during the time period that Harris and Edwards were working together on the series. That collaborator is Meredith, and the "different book" is currently listed for pre-sale for release in the United States on May 21, 2024, as *The Future Human: New Ways of Living and Being on Earth*. In the United Kingdom, the book is advertised as being released on June 2, 2024, on Amazon and is titled *The Future Human: Conversation with the Zs Book Three.* While Edwards was surprised to learn she was replaced, she was not surprised by Harris' choice of Meredith as a new collaborator because of his aspirations for a larger platform that he likely believes that Meredith can offer.

85.     On information and belief, Harris recorded this book with Meredith on or around the same period that Harris refused to participate in the planned August 2023 recording with Edwards. In the planned August 2023 recording session, Edwards and Harris were going to finish the last conversation for Book Three of their Conversations with the Zs series and the final conversations to complete Book Four.

86.     On information and belief, Harris refused to continue with the agreed-upon books that he was creating with Edwards because he instead began the collaboration with Meredith for a new "Conversations with the Zs" book.

### Edwards Seeks a Global Resolution with Harris

87.     After it became clear that Harris was attempting to end their creative relationship and Edwards had been told that Harris had lost interest in the project, Edwards approached Harris with a global resolution that would allow her to keep the recordings for Books Three and Four but bar either party from using the series title of

"Conversations with the Z's" or anything substantially similar going forward, such as "Interviews with the Zs."

88.    At this time, Edwards became concerned about the explanations Harris had provided to his personnel to justify his recent actions. Edwards greatly valued the relationships and respect that she had cultivated over the previous two years with the LHE team. In an effort to amicably resolve the dispute, in conjunction with requesting that New World file the corrected copyrights, Edwards also requested that Harris provide a written public apology to all LHE personnel and contractors clarifying what actually occurred. The apology that Edwards requested would include that Harris acknowledge:

   a.  It was extremely disrespectful and hurtful to Edwards when Harris not only denied her legal co-authorship rights in the "Conversations with the Z's" books but also failed to insist on correctly copyrighting both books in the names of Harris and Edwards.

   b.  Upon Edwards' discovery that she had been cut out of her rights as a co-author to copyright protection for Books One and Two, Edwards immediately reached out to Harris in good faith asking him to correct the mistake. Edwards was agreeable for Harris to apologize and correct the situation so that they could move forward with Books Three and beyond in a more professional manner. Instead, Harris refused to continue with the entire planned book series without reason, along with their personal friendship and business relationship in a perfunctory email.

c. Edwards always respected Harris' wish to be the face of the books and she never asked for more money or publicity than the parties originally agreed.

d. Edwards dedicated enormous amounts of her time, heart and money to create these books and was supportive and easy to work with. She stepped in quickly when asked by Harris to record other works for his classes. Edwards also requested that moving forward she would receive the same financial accounting from New World as Harris received.

89. Harris refused to send the apology to his employees and contractors at LHE. Edwards felt that she had no option but to file suit.

**COUNT I**
**DECLARATORY JUDGMENT**
**CONTROVERSY REGARDING OWNERSHIP OF**
**CONVERSATIONS WITH THE Z'S TRADEMARK**
**28 U.S.C. §§ 2201-2202**
**(By Edwards And Wisdom Transcends**
**Against Harris and LHE, jointly and severally)**

90. Plaintiffs reallege and incorporate by reference all prior allegations as though fully set forth herein.

91. There is an actual, justiciable dispute between Edwards and Wisdom Transcends on the one hand and Harris and LHE on the other as to which party owns the "Conversations with the Z's" trademark.

92. The parties used the "Conversations with the Z's" trademark as a source identifier for the book series.

93. As such, the parties have joint rights to the "Conversations with the Z's" trademark for purposes of providing the aforementioned services.

94.     On information and belief, Harris and LHE disagree with Plaintiffs' position.

95.     Plaintiffs seek a declaratory judgment that all parties are the joint owners of the "Conversations with the Z's" mark.

## COUNT II
## BREACH OF ORAL CONTRACT
### (By Edwards Against Harris and LHE, jointly and severally)

96.     Plaintiffs reallege and incorporate by reference all prior allegations as though fully set forth herein.

97.     On or about November 2021, Harris/LHE entered into an oral agreement with Edwards to publish multiple books, which included a ten to twelve book series.

98.     The third and fourth books in the collaboration were key books designed to be topic-specific and to offer the reader a deeper exploration into the ideas and information on broad topics such as karma, reincarnation, death and dying.

99.     Book Three had been slated for a late January, early February 2024 release in written form. However, Harris unilaterally decided not to publish Book Three and, without notice to Edwards, rejected New World's offer to publish Book Three.

100.    At the time that Harris unilaterally decided not to publish Book Three, it was nearly finished, the final recording session had been planned, and final edits to the written transcripts had already begun. Harris' refusal to finalize and publish the previously recorded material in Books Three and Four was delivered to Edwards via email in June 2023. This came as a complete surprise to Edwards as they had previously agreed to publish ten to twelve books in the series. It was also after Harris had publicly announced the release of the first of the audio recordings for Book Three through his

popular free monthly "Energy Update" on YouTube and to be released on his website as monthly MP3s that had been scheduled shortly thereafter.

101.   As with Books One and Two, the audio recordings were planned to be released first followed by the physical and audio book publication several months later.

102.   Plaintiffs performed each and all of the conditions, covenants and obligations required to date under the oral agreement.

103.   On information and belief, Harris and LHE also breached the terms of the oral contract and breached the covenant of good faith and fair dealing by entering into an agreement with New World for Book Two that was contrary to their copyright co-ownership agreement. Namely, the Second NWL Agreement stated that New World would register the Book Two copyright solely under LHE.

104.   On or about June 2023, Harris and LHE further breached the terms of the oral contract and breached the covenant of good faith and fair dealing by unilaterally refusing to publish or complete Book Three and other materials in the series. Harris unilaterally rejected New World's offer to publish the written version of Book Three with no notice to or collaboration with Edwards in breach of their oral contract.

105.   Harris further breached by publishing a book with another collaborator, Meredith. This new book has been described as the third book in the Conversations with the Z's series. Harris and LHE have significantly depleted Plaintiff's profitability related to the future books envisioned by Harris and Edwards through his new collaboration.

106.   Plaintiff understands and believes and on that basis alleges that the use of the Book Three content for these collaborations constitute a nonexclusive license granted by Harris as the co-author of Book Three and an accounting of the profits are

owed. Plaintiffs intend to seek monetary, injunctive, and declaratory relief as to the profits owed pursuant to that license.

107. As a direct and proximate cause of Harris and LHE's breach, Plaintiffs suffered harm and now seek injunctive relief, monetary damages including but not limited to compensatory damages for the expenditure of resources for the development of the books, rescission of any and all agreements related to Books Three and Four, a return of all content, drafts, transcripts, and recordings of Books Three and Four, and the unreleased "Behind the Scenes with Lee and Dianna" recording made in conjunction with Book One, to Wisdom Transcends and Edwards a reversion of intellectual property rights to Books Three and Four, costs as allowed by statute, and other damages as the court may deem proper, according to proof.

**COUNT III**
**FRAUD AND CONCEALMENT**
**(By Edwards And Wisdom Transcends**
**Against Harris and LHE, jointly and severally)**

108. Plaintiffs reallege and incorporate by reference all prior allegations as though fully set forth herein.

109. This cause of action is plead both independently and in alternative to Plaintiffs' cause of action for breach of oral contract.

110. Edwards performed certain actions in the development, writing, and publishing of materials based upon the representations of Harris and LHE.

111. Edwards relied on these representations regarding co-authorship and co-ownership when she agreed to contribute to the authoring of the books in the series.

112.   Despite these statements, Harris and LHE entered into agreements with New World which specifically directed New World to register the copyrights to Book Two under LHE and to exclude Edwards; these facts were concealed from Plaintiffs.

113.   When Edwards learned that LHE and New World had attempted to cut off her legal rights as a co-owner and co-author of the works, she requested on numerous occasions that Harris and/or New World properly register the copyright in the names and ownership of the co-authors.

114.   Harris and LHE entered into agreements that purported to grant New World the "sole and exclusive right to publish" Book One and Book Two even though Harris was not entitled to grant these rights as a matter of law. While Edwards was aware that Harris was proceeding to enter into a Publishing Agreement with New World for Book Two, she was under the impression that her legal rights were being protected as a co-author and co-owner, and that any such rights granted were not exclusive.

115.   Harris and LHE intentionally benefitted from the contributions of Edwards while simultaneously excluding her from the contracts and negotiations between LHE/Harris and New World. This was also exemplified by the fact that, according to Harris, the Imprint Agreement was offered to him to keep the book series with New World. This was meant to include Book Three, Book Four and the ongoing series which Harris then refused to complete.

116.   For some time, self-publishing or finding another publisher were options being considered for Books Three and Four in conversations between Harris and Edwards. Harris only shared this near final draft of the Imprint Agreement with Edwards after several requests by Edwards to review. Edwards' review of the draft Imprint

Agreement revealed terms which were significantly less favorable that what had been previously agreed between Harris and Edwards. Edwards did not like the Imprint Agreement that she had reviewed, and which Harris represented to Edwards he was prepared to sign.

117. After Harris refused to complete the book series and ended his relationship with Edwards, months later through his IP counsel, Harris asked Edwards if she wanted to include Books One and Two in the Lee Harris Editions Imprint deal with New World. When Harris subsequently asked Edwards if she wanted to include Books One and Two in his Imprint deal with New World, he refused to share the terms or content of the Imprint deal he was asking her to consider.

118. On information and belief, while Edwards was working with Harris and New World to fix the various issues and working with LHE on the forthcoming Book Three, Harris was working with Meredith to create and release a new collaboration that is titled *The Future Human: Conversation with the Zs Book Three* in the United Kingdom and *The Future Human: New Ways of Living and Being on Earth* in the US. This book will be released in the United States on May 21, 2024, and in the United Kingdom on June 2, 2024.

119. Once Edwards realized she had legal rights, she requested that the works be jointly copyrighted, and this was denied by LHE through its counsel and New World. When Edwards wrote to New World requesting that the copyrights be correctly filed as provided by law in the names of both co-authors, New World, on information and belief in concert with LHE, rejected Edwards' request and proceeded to file the copyright solely in the name of LHE. At that time, New World and LHE failed to designate

Edwards' and Wisdom Transcends' copyright interests, as provided by law by failing to timely file the copyright to Books One and Two to correctly reflect the Edwards' and Wisdom Transcends' intellectual property rights.

120. Harris and LHE failed to disclose the following: (i) the terms of the Agreement between Harris/LHE and New World for Book Two; (ii) New World offered to print Book Three which Harris rejected outright; (iii) the terms of the imprint agreement; and (iv) Harris and LHE collaborated with Meredith on materials that were similar or the same in concept to Book Three and Book Four and intended to publish these same materials—notably, this collaboration with Meredith occurred at the same time that Edwards was working diligently on Books Three and Four of her series with Harris.

121. Had Harris and LHE disclosed the above facts, Plaintiffs would not have expended significant time, effort, energy, and money in the creation of Books Three and Four. Harris and LHE have significantly or completely depleted Plaintiffs' ability to profits as to the use of Book Three and Book Four content due to the collaboration with Meredith.

122. As a direct and proximate cause of Harris and LHE's fraudulent actions, Plaintiffs now seek injunctive relief, monetary damages and costs as allowed by statute, correction of the copyright registrations, punitive damages, and other damages as the court may deem proper, according to proof.

**COUNT IV**
**EQUITABLE ACCOUNTING**
**(By Edwards and Wisdom Transcends Against Defendants)**

123.    Plaintiffs reallege and incorporate by reference all prior allegations as though fully set forth herein.

124.    On January 20, 2022, LHE and New World entered into the NWL Agreement to publish Book One.  Pursuant to this Agreement, 75% of the sums due to LHE were to be paid to LHE and 25% of the sums due to LHE were to be paid to Wisdom Transcends.

125.    Wisdom Transcends and Edwards are third-party beneficiaries to the NWL Agreement and the Second NWL Agreement and are entitled to an accounting of the proceeds of the NWL Agreement and the Second NWL Agreement.

126.    Further, as Wisdom Transcends is a co-owner of the copyrights to Book One and Book Two, Edwards and Wisdom Transcends are entitled to royalties and accountings from LHE/Harris and New World resulting from the distribution, publication, and/or use of Book One and Book Two, both written versions and audio recordings and the unreleased "Behind the Scenes with Lee and Dianna" recorded in connection with Book One.

127.    Wisdom Transcends and Edwards are informed and believe, and thereon allege, that Wisdom Transcends and Edwards may be owed additional compensation under the NWL Agreement and the Second NWL Agreement and/or as co-owner of the Book One and Book Two copyrights.  The exact amounts due to Plaintiffs by Defendants are unknown to and cannot be ascertained by Plaintiffs without an

accounting by Defendants and Wisdom Transcends and Edwards thereby demands the same.

128.    Wisdom Transcends and Edwards are informed and believe, and thereon allege, that Wisdom Transcends and Edwards may be owed additional compensation under the agreement between Edwards and Harris regarding the audio book sales and sales of media files derived from Book One and Book Two. The exact amounts due to Plaintiffs by Defendants are unknown to and cannot be ascertained by Plaintiffs without an accounting by Defendants and Wisdom Transcends and Edwards thereby demand the same.

129.    Wisdom Transcends and Edwards are informed and believe, and thereon allege, that Wisdom Transcends and Edwards may be owed additional compensation for foreign distribution of Book One and Book Two. The exact amounts due to Plaintiffs by Defendants are unknown to and cannot be ascertained by Plaintiffs without an accounting by Defendants and Wisdom Transcends and Edwards thereby demand the same.

130.    Edwards has requested through her counsel copies of the Audible contracts signed by LHE for Books One and Two but as of the date of filing this Complaint, neither Harris nor LHE have provided these contracts to Edwards, nor have they provided any accounting thereunder.

### COUNT V
### QUASI- CONTRACT/UNJUST ENRICHMENT
**(By Wisdom Transcends and Edwards
Against Harris and LHE, jointly and severally)**

131.    Plaintiffs reallege and incorporate by reference all prior allegations as though fully set forth herein.

132.    Defendants Harris and LHE received benefits, namely the research, structure, and creation of Book Three and Book Four and retained the benefits of those books at the expense of Plaintiffs giving rise to a cause of action for unjust enrichment.

133.    Defendants, jointly or severally, promised to publish Book Three and Book Four. As previously stated, New World offered to publish Book Three but this offer was rejected by Harris. Instead, Harris is planning to publish a new book through New World with Meredith. That book is titled *The Future Human: Conversation with the Zs Book Three* in the United Kingdom and *The Future Human: New Ways of Living and Being on Earth* in the United States. This book will be released later this year.

134.    It is inequitable for Defendants to retain an interest in the intellectual property associated with Book Three and Book Four. Defendants LHE and Harris have been unjustly enriched by maintaining an interest in this intellectual property and have halted efforts to proceed in good faith as agreed to publish other planned materials in the series. Defendants LHE and Harris have further been unjustly enriched for appropriating the Conversations with the Zs series identifier for the book series owned by Edwards and Harris in connection with pre-sale of *The Future Human: Conversation with the Zs Book Three* on the Amazon UK site.

135.    Defendants are therefore liable to Plaintiffs under the doctrine of quasi contract for restitution by virtue of their unjust enrichment in an amount to be determined at trial.

**COUNT VI**
**PROMISSORY ESTOPPEL**
**(By Edwards And Wisdom Transcends**
**Against Harris and LHE, jointly and severally)**

136.   Plaintiffs reallege and incorporate by reference all prior allegations as though fully set forth herein.

137.   Edwards entered into an oral agreement to develop, write, and publish multiple books and recordings with Harris and LHE. In making the representations associated with the oral agreement, Harris and LHE knew, or should have known, that Plaintiffs would reasonably be induced to rely on such representations in agreeing to contribute to authoring books with Harris and LHE.

138.   Edwards reasonably relied on this oral agreement regarding co-authorship and co-ownership when she agreed to contribute to the authoring of multiple recordings, books, and audio books with Harris and LHE.

139.   Despite these statements, Harris and LHE entered into agreements with New World which specifically directed New World to register the copyrights to Books One and Two under LHE and to exclude Edwards.

140.   Further, Harris entered into an agreement with New World to publish a new book titled *The Future Human: Conversation with the Zs Book Three* in the United Kingdom. On information and belief, this book replaced the Conversations with the Zs Book 3 *"Demystifying Reincarnation and Karma,"* co-authored by Harris and Edwards and which Harris refused to publish following New World's offer to do so.

141.   When Edwards learned that she had been denied her legal rights as a co-author and co-owner of the copyrights and requested on numerous occasions to both LHE and New World that copyrights in the names of the co-authors be properly

registered, New World, who had yet to timely file any copyright registration for Books One or Two, refused to acknowledge Edwards' right saying that the publishing agreements only provided for Harris as copyright owner.

142. Harris and LHE entered into an agreement that purported to grant New World the "sole and exclusive right to publish" Books One and Two even though Harris was not entitled to grant these rights as a matter of law.

143. Harris and LHE intentionally benefitted from the contributions of Edwards while simultaneously excluding her from the contract between LHE/Harris and New World to maximize the benefit and profits to Harris and LHE. This was also exemplified by the fact according to what Harris told Edwards, the Lee Harris Editions Imprint deal was offered to him to keep the Conversations with the Zs book series between Harris and Edwards with New World. This was meant to include Book Three, Book Four and the ongoing series which Harris then refused to complete.

144. For some time, self-publishing or finding another publisher were options being considered for Books Three and Four in conversations between Harris and Edwards. Edwards had not agreed to the Lee Harris Editions Imprint deal for the published book series based on a draft of the Imprint deal she had reviewed, and which Harris represented to Edwards he was prepared to sign. Harris only shared this near final draft of the Imprint deal with Edwards after numerous requests by Edwards to review. Edwards' review of the draft Imprint deal revealed terms which were significantly less favorable that what had been previously agreed between Harris and Edwards.

145. A few months after Harris refused to complete the book series and ended his personal relationship with Edwards, he subsequently asked Edwards through his IP

counsel if she wanted to include Books One and Two in his Imprint deal with New World. When Edwards asked to see the then current terms of the Imprint deal, Harris then refused to share the terms or content of the final Imprint deal he was asking her to consider.

146. Once Edwards realized that her legal co-author and co-creator rights had been denied, she requested that the works be jointly copyrighted, and this was again denied by New World. At that time, New World and LHE failed to carry out their obligations to protect Edwards' and Wisdom Transcends' interests by failing to timely file the copyright to Book Two to correctly reflect the Edwards' and Wisdom Transcends' intellectual property rights.

147. In summation, Harris and LHE failed to honor the representations it made to Plaintiffs regarding the co-authorship and development of Books Two, Three and Four.

148. As a direct and proximate cause of Harris and LHE's failure to perform according to the representations and promises made by Harris and LHE, Plaintiffs have been monetarily damaged. Injustice can be avoided only be enforcing defendant's promises, assurances, and representations. Plaintiffs now seek monetary damages and costs as allowed by statute, correction of the copyright registrations, punitive damages, and other damages as the court may deem proper, according to proof.

## COUNT VII
## DECLARATORY JUDGMENT REGARDING
## OWNERSHIP OF COPYRIGHTS
### (By Edwards and Wisdom Transcends Against All Defendants)

149. Plaintiffs reallege and incorporate by reference all prior allegations as though fully set forth herein.

150.   An actual and justiciable controversy exists between Edwards, Wisdom Transcends, LHE, Harris, and New World with respect to whether Edwards is a co-owner of the copyrights to Book One, Book Two, Book Three, and Book Four, all audio books, and the derivative works of all the books and audiobooks, together with LHE. This is based, inter alia, on the NWL Agreement and the Second NWL Agreement terms specifying that New World would register the copyrights for Book One and Book Two solely in the name of LHE, and that the license was exclusive. Indeed, it was only after continual pressure by Plaintiffs over many months that Defendants and New World agreed to file and/or correct the copyright applications; to date, after the expenditure of substantial time and legal fees over many months, Plaintiffs are concerned that these filings remain incorrect and/or deficient.

151.   Edwards assigned her interest in Books One and Two to Wisdom Transcends but has never otherwise repudiated her interest in Book One or Book Two and is thus entitled to participate as a co-owner in the benefits, including the payment of any royalties and accountings therefor.

152.   Edwards and Wisdom Transcends seek and are entitled to a Declaratory Judgment against all Defendants decreeing that Wisdom Transcends is a co-owner of the Book One copyright, the Book Two copyright, the Book Three copyright, and copyrights in the associated derivative works (i.e., the audio books and media files) and is entitled to enforce all other rights, benefits, and causes of action accorded to copyright owners with respect thereto.

153.   Edwards and Wisdom Transcends seek and are entitled to Declaratory Judgment against all Defendants decreeing that the work of *The Future Human:*

*Conversation with the Zs Book Three* (alternatively titled *The Future Human: New Ways of Living and Being on Earth*) was a result of a non-exclusive license by Harris and LHE to Meredith and/or Harris; therefore, Edwards and Wisdom Transcends and are entitled to enforce all other rights, benefits, and causes of action associated with such non-exclusive license.

154.   Absent the above declarations, Defendants will continue to wrongfully assert its rights to the Published Work and thereby cause Plaintiffs irreparable harm and injury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for a judgment against Defendants, individually, jointly and severally, as follows:

a.   For general damages according to proof, and in no event less than $100,000.

b.   For damages relating to breach of contract for Book Three and Book Four and the future books in the series;

c.   For special damages according to proof;

d.   For nominal damages;

e.   For punitive damages according to proof;

f.   For rescission of agreements between Plaintiffs and Harris as to Books Three and Four with reversion of Plaintiffs' rights to the intellectual property of Books Three and Four to Plaintiffs;

g.   For an injunction against all Defendants;

h. For Defendants to be required to correct the copyright applications and/or registrations of Book One and Book Two to name Dianna Edwards as a co-author and Wisdom Transcends as a co-owner;

i. Declaratory Judgment against all Defendants decreeing that Wisdom Transcends is a co-owner of the Book One copyright, the Book Two copyright, the Book Three copyright, and copyrights in the associated works (i.e., the audio books and media files) and is entitled to enforce all other rights, benefits, and causes of action accorded to copyright owners with respect thereto;

j. Declaratory Judgment against all Defendants decreeing that Wisdom Transcends is a co-owner of the trademark for the series and is entitled to enforce all other rights, benefits, and causes of action accorded to copyright owners with respect thereto;

k. For Defendants to be required to provide an accounting of the New World Agreement proceeds and payments;

l. For Defendants Harris and LHE to be required to provide an accounting for audio and foreign book sales, proceeds, and payments;

m. For an award of costs;

n. For an award of attorneys' fees;

o. For an award of pre-judgment and post-judgment interest for the maximum amount allowed by law;

p. For any and all other relief the Court deems just and proper.

//

//

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial in this action on all claims so triable.


Respectfully submitted,


WALKER STEVENS CANNOM LLP

Dated: February 29, 2024                    By: ___/s/ *Hannah L. Cannom*___
                                                     HANNAH L. CANNOM
                                                     Attorneys for Plaintiffs
                                        Dianna Edwards and Wisdom Transcends, Inc